## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| I3LOGIX, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. _____ |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ENHANCED VOTING LLC. | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

### COMPLAINT AND DEMAND FOR A JURY TRIAL
### PERMANENT INJUNCTIVE RELIEF REQUESTED

Plaintiff i3logix, Inc. ("i3logix"), by its undersigned counsel, and for its Complaint against Defendant Enhanced Voting LLC ("EV" or "Defendant"), hereby allege as follows:

### SUMMARY OF NATURE OF ACTION

1.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*  Plaintiff asserts infringement of two patents relating to ballot reporting technology.

### PARTIES

2.      Plaintiff i3logix is a corporation organized under the laws of the State of Colorado with its principal place of business at 9501 E Northfield Blvd., Denver, Colorado 80238.

3.      On information and belief, Defendant EV is a corporation organized under the laws of the State of Florida with its principal place of business at 13475 Atlantic Blvd., Jacksonville, Florida 32225.

4.      Defendant and/or its subsidiaries and affiliates make, use, sell, offer for sale in the United States, and/or import into the United States, products and services under the name Ballot Scout.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Defendant because Defendant engages in business within this District, Defendant has committed acts of infringement in violation of 35 U.S.C. § 271 in this District, and Defendant has placed infringing products and services into the stream of commerce, through an established distribution channel, with the knowledge and/or understanding that such products and services are offered for sale, sold, and/or used in this District.  These acts have caused injury to Plaintiff within this District and continue to cause injury to Plaintiff within this District.  Defendant derives substantial revenue from the sale and use of its infringing products and services within this District.  Defendant expects or should reasonably expect its actions to have consequences within this District and Defendant derives substantial revenue from interstate commerce.

7.      Venue is proper over Defendant in this District under 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Defendant resides in this district through

its incorporation in Florida, Defendant is headquartered in this District, and Defendant has committed acts of infringement in this District.

## PATENTS-IN-SUIT

8.      Plaintiff i3logix is the owner of all right, title, and interest in and to U.S. Patent No. 12,340,633, entitled "Systems and Methods for Mail-In Ballot Status Reporting" ("the '633 patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on June 24, 2025.  A true and correct copy of the '633 patent is attached as **Exhibit A** and made a part hereof.

9.      Plaintiff i3logix is the owner of all right, title, and interest in and to U.S. Patent No. 11,670,127, entitled "Systems And Methods For Mail-In Ballot Status Reporting" ("the '127 patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on June 6, 2023.  A true and correct copy of the '127 patent is attached as **Exhibit B** and made a part hereof.

10.      Defendant has at no time been licensed under the '633 patent or the '127 patent (collectively, "the '633 Patent Family").

11.      The '633 Patent Family relates to "systems and methods for monitoring and reporting the status of mail-in paper ballots." ('633 patent, Ex. A, at 1:31-33.) According to the '633 Patent Family, there has been an increase in mail-in or absentee voting since at least 2008.  (*Id*. at 1:20-27.)  In conventional mail-in ballot systems, however, the status of each voter's paper ballot materials could not be tracked and communicated to each respective voter and/or election division as ballot materials travelled through the postal system.  (*Id*. at 1:54-58, 9:56-61, 10:10-12, 10:53-55.)

- 3 -

Thus, prior art ballot reporting systems lacked "transparency into the mail-in voting process" and the ability to "determine the accuracy of election results." (*Id.* at Abstract, 2:40-42.) According to the '633 Patent Family, an improved monitoring and reporting system "facilitates greater transparency in the mail-in ballot process, which may increase voter turnout and/or voter confidence in the mail-in ballot voting process." (*Id.* at 1:58-61.)

12.    The claims of the '633 Patent Family are directed to specific methods for solving the technological problem of a lack of transparency and confidence in the monitoring and reporting of mail-in ballot materials and recite specific structures, rules, and steps for how to perform the methods at a technical level.

13.    The claims of the '633 Patent Family overcome the limitations of the prior art by providing a specific technical solution to the technological problem of allowing voters and election officials to directly monitor mail-in ballot materials.

14.    The independent claims of the '633 Patent Family recite several specific structures, rules, and steps for how to solve the technological problem of voters and election officials directly monitoring and reporting mail-in ballot materials, including: (i) specific types of structures (*i.e.*, a ballot, first and second envelopes, a scanner, graphical representations, multitudes of data structures and unique identifiers) that are used to send information to and receive information from specific locations (*i.e.*, a host computer system and/or a postal carrier computer system); (ii) specific rules for whether and how graphical representations or identifiers are created, scanned, or matched with voter information; and (iii) specific modifications to the monitoring and

reporting of ballots (*i.e.*, sending a first, second, or third status update to voters or elections officials using a voter's information).

15.    The claimed scanner, graphical representations and identifiers, and mail-in ballot materials are concrete parts of the claimed computing environment that are used according to specific rules to modify the ballot tracking and reporting process in specific ways.

16.    The claims of the '633 Patent Family are directed to a specific technical solution to the technological problem of allowing voters and election officials to directly monitor and report mail-in ballot materials.  The claims of the '633 Patent Family recite specific technical limitations (including physical components, specific types of graphical data structures, specific rules, etc.) that narrow the scope of the claims to specific methods for improving ballot monitoring technology and avoid preempting alternative solutions, such as methods that use different types of physical components or data structures, are based on different rules, change different conditions in ballot monitoring, etc.  The claims of the '633 Patent Family are patent eligible.

17.    The '633 Patent Family recite concrete, novel, unconventional, non-routine limitations that, taken either individually or as an ordered combination, ensure that the patents in the '633 Patent Family amount to significantly more than patents upon an abstract idea itself.

18.    The independent claims of the '633 Patent Family expressly recite unconventional, non-routine limitations that provide a specific technical solution to a technological problem that is unique to mail-in ballot technology (*i.e.*, how to provide

transparency into and instill voter confidence in mail-in ballot voting), including: (i) creating multiple unique identifiers associated with a voter's information and a ballot; (ii) providing at least two envelopes, each with unique identifiers or graphical representations; (iii) scanning each unique identifier or graphical representation at specific stages of the postal carrying process; (iii) associating each unique identifier or graphical representation with a specific voter's information by matching unique identifiers between a central computing system and a postal carrier computer system; and (iv) providing specific status updates to voters or election officials based on the specific stage of transit of each envelope, thereby improving transparency and confidence in mail-in ballot voting.

19.    The specifications of the '633 Patent Family describe the claimed physical components (*i.e.*, scanner and databases), the claimed envelopes with graphical representations, the claimed unique identifiers associated with voter and ballot information, the claimed rules for whether and how graphical representations or identifiers are created, scanned, or matched with voter and ballot information, and the claimed status updates directly to users as inventive features.  The specifications' description of these limitations as inventive features confirms that they were neither routine nor conventional.

20.    The prosecution history of the '633 patent further shows that the limitations of the claims are neither routine nor conventional and are directed to a practical application.  For example, the Applicant confirmed in a response to a rejection that the limitations of the claims overcome 35 U.S.C. § 101:

[T]he claims recite a particular way for tracking and providing status updates on mail-in ballots, and the claims do not seek to monopolize any general abstract idea to which the claims are alleged to be directed to, such as "the abstract idea of managing a relationship between senders and receivers by notifying senders and receivers of mailed ballots a status of the mailed ballots." . . . In other words, the claims do not merely seek to monopolize the general idea of managing a relationship between senders and receivers by notifying the senders and receivers of mailed ballots a status of the mailed ballots, but rather are directed to a specific, practical application of such a concept under Step 2A, Prong Two.

For example, Claim 1 has been amended to recite: (ii) determining, by the processor based on information stored in a database comprising associations between voters and ballots, a match between the fourth data and the second unique identifier; and (iii) sending, by the processor based on the fourth data and the match, a fourth status update using the e-mail address or the mobile device information, the fourth status update indicating that the ballot has been picked up by the postal carrier for delivery to the address associated with the destination."

These elements are related to a barcode on a reply envelope for mailing back in a completed ballot being scanned, and that information from the scanning being used to determine a match between the barcode data and a preexisting relationship or match between that barcode data and voter or ballot data in a database. Once that match is made, that information can be used to send a status update that the ballot has been picked up by postal carrier for delivery to a device of a voter to which that barcode on the envelope is associated in the database. Such elements represent a practical application of any alleged abstract idea that further represents more than a drafting effort designed to monopolize the abstract idea alleged in the Office Action.

21.    The ordered combination of the limitations of the claims of the '633 Patent Family was neither routine nor conventional and was directed to a specific practical application.

22.    Plaintiff is unaware of any technical solution, that was publicly disseminated or available as of the earliest effective filing date of the '633 Patent Family (*i.e.*, February 2, 2010), that provided the technical ability to monitor and report mail-in ballot materials in the specific way recited in the claims. Each of the prior art references asserted by the PTO during prosecution of the applications that issued as the '127 and '633 patents fails to disclose, teach, or suggest the unique combination of the specific technical limitations recited in the claims of the '633 Patent Family, including: (i) generating multiple unique identifiers associated with a voter's information and a ballot; (ii) providing at least two envelopes, each with unique identifiers or graphical representations; (iii) scanning each unique identifier or graphical representation at specific stages of the postal carrying process; (iii) associating each unique identifier or graphical representation with a specific voter's information by matching unique identifiers between a central computing system and a postal carrier computer system; and (iv) providing specific status updates to voters or election officials based on the specific stage of transit of each envelope, thereby improving transparency and confidence in mail-in ballot voting.

23.    The claims of the '633 Patent Family also provide specific technical benefits over the prior art, which further confirms that the claims of the '633 Patent Family contain an inventive concept. Some of these technical benefits are listed below:

- By tracking the status of ballots, an "elections division" may also beneficially check, as described at column 9, line 66 to column 10, line 4 of the '633 Patent:

  o "the number of received paper ballot materials,"

  o "the number of paper ballot materials that are in transit to the elections division by the paper postal carrier, and/or"

  o "the number of paper ballot materials that were mailed by a specific date, among other useful information."

- Using such information about tracked ballots, an "elections division" may further "be able to readily determine the location and status of each paper ballot of a plurality of paper ballots. This reporting capability, which is facilitated by [the] above-described monitoring capability, may facilitate increased certainty in the election results." '633 Patent at column 10, lines 5-9.

- Another beneficial aspect of the '633 Patent Family "provide each voter a notification regarding the acceptance or rejection of his/her paper ballot." '633 Patent at column 10, lines 53-55. In this way, "some of the voters whose paper

ballots [] were rejected may be able to take appropriate corrective action so that his/her paper ballots [] is properly corrected and accepted by the elections division [], and by the election deadline." '633 Patent at column 11, lines 2-7.

24.    Regardless of whether the limitations of the claims are considered individually or together as an ordered combination, the claims recite a concrete, novel, technical solution to the technological problem of a lack of transparency in the mail-in ballot process and are patent eligible under Section 101.

25.    In many U.S. states, voters are also guaranteed the right to cast secret ballots in public elections. *See, e.g.,* the Washington State Constitution, Art. VI, Sec. 6 ("The legislature shall provide for such method of voting as will secure to every elector absolute secrecy in preparing and depositing his ballot"); the Arizona State Constitution, Art. VII, Sec. 1 ("All elections by the people shall be by ballot, or by such other method as may be prescribed by law; Provided, that secrecy in voting shall be preserved."). Such guaranteed rights introduce technical challenges for mail-in ballots, especially when those voters may prefer to track the status of their ballots. If it is known who cast a given ballot so that the ballot can be tracked and status updates can be sent to that voter, then the secrecy of that voter's ballot has not been maintained. The claims of the '127 and '633 patents provide a technological solution for providing voters with status updates and ballot tracking while protecting the secrecy or content of the ballot of each voter.

26.     The technical solution to the technical problem of protecting the secrecy of ballots while also tracking the status of a mail-in ballot for the voter renders the claims of the '127 and '633 patents patent eligible under Section 101. For example, claim 1 of the '633 patent includes a first envelope with a first unique identifier, where the first envelope contains a ballot and a second envelope. This first envelope is mailed to a voter so that the voter can complete the ballot and return the ballot by mail in the second envelope. The second envelope has a second unique identifier. Since the first and second envelopes each have unique identifiers (e.g., barcodes), the ballot can be tracked on its way to the voter (i.e., in the first envelope) and can be tracked on its return journey from the voter to an elections division (i.e., in the second envelope). Notably in claim 1 of the '633 patent, there is no unique identifier or barcode for mail-in ballot tracking recited in the claims as being present on the ballot itself. In this way, the ballot itself is not tracked, but rather just the envelopes the ballot travels in. As such, the claims of the '127 and '633 patents present a technological solution to the problem of accurately tracking the movement of ballots in a mail system without tying the ballot itself to a particular voter. In this way, the rights of a voter to cast a secret ballot can be preserved. For example, once the second envelope is opened at an elections division and counted, there is no way to tie a particular ballot to the envelope it was in, and therefore no way to tie a specific voter to a specific completed ballot.

27.     The claims of the '127 and '633 patents therefore present a technical solution to a technical problem that allows a voter to still track their mail-in ballot and have confidence that their ballot was not lost, while also protecting the rights of voters

to cast secret ballots. Such a technical solution to a technological problem renders the claims patent eligible under Section 101.

## LOST BUSINESS OPPORTUNITIES

28.    Plaintiff has lost business opportunities to Defendant due to Defendant's make, use, offer for sale, sale, or importation of its Ballot Scout product.

29.    For example, Plaintiff has lost contracts for providing mail-in ballot monitoring and reporting technology in the State of Nevada, the State of New Mexico, and the State of Georgia.  Each State awarded a contract to Defendant.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 12,340,633

30.    Plaintiff repeats and re-alleges Paragraphs 1-8 and 10-29 as though fully set forth herein.

31.    Defendant has infringed and continues to infringe one or more claims of the '633 patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, and selling in the United States, and/or importing into the United States, certain products that embody or practice one or more claims of the '633 patent, including but not limited to the following products and services:  Ballot Scout.

32.    Defendant has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '633 patent by contributing to or inducing acts of infringement by others who make, use, sell, offer for sale, or import in the United States products that embody or otherwise practice one or more claims of the '633 patent.  Such products and services include Ballot Scout. It is especially made for

infringing use and not a staple article or commodity of commerce suitable for substantial non-infringing use.

33.    Defendant has had knowledge of the '633 patent and its relevance to the accused products and services since at least August 28, 2025, when counsel for Plaintiff sent a letter and an accompanying claim chart to Defendant's Founder & President, Aaron Wilson, informing Defendant of its infringement of the '633 patent.

34.    Defendant has had knowledge of the '633 patent and its relevance to the accused software products and services since at least August 28, 2025, when Defendant started reviewing, investigating, and evaluating the '633 patent, including whether Defendant infringes the '633 patent.

35.    After receiving Plaintiff's letter regarding Defendant's infringement of the '633 patent, Defendant exchanged communications with third party Democracy Works, Inc. ("DW") relating to the '633 patent and how the claims of the '633 patent read on Defendant's Ballot Scout product.

36.    On September 22, 2025, DW sent Plaintiff's counsel a letter stating that Defendant is DW's licensee in connection with Defendant's Ballot Scout product and confirming that DW is aware of the '633 patent.

37.    Defendant has had knowledge of the '633 Patent Family since at least as early as 2023, when Plaintiff's President, Steve Olsen, told Defendant's President, Aaron Wilson, that one of Plaintiff's patent applications relating to its innovative BallotTrax technology issued or was expected to issue as the '127 patent.  In or around mid-2023, Defendant requested the patent number of Plaintiff's recently issued patent

(*i.e.*, the '127 patent), and Plaintiff provided it to Defendant.  At least as early as 2023, Defendant and Plaintiff had also discussed licensing Plaintiff's BallotTrax technology and rights to Plaintiff's intellectual property relating thereto, including the '633 Patent Family.  In or around mid-2023, Defendant instead began licensing the accused Ballot Scout product from DW, thereby effectively rejecting Plaintiff's offer to license Plaintiff's patents and patent applications relating to its BallotTrax technology, including the '633 Patent Family.  Shortly after Defendant began selling the accused Ballot Scout product, Plaintiff informed Defendant at the 2023 National Association of State Election Directors Conference in Charleston, South Carolina, that Defendant's Ballot Scout technology infringes the '127 patent.  Therefore, Defendant knew of the '633 Patent Family and its infringement thereof because Plaintiff told Defendant that the '127 patent issued, Defendant rejected Plaintiff's offer to license its BallotTrax technology (which includes the '127 patent and the related ), Plaintiff told Defendant that Ballot Scout infringed the '127 patent, and Defendant began monitoring Plaintiff's patent applications and patents relating to mail-in ballot monitoring and reporting technology, including the '633 patent.

38.    Defendant has had knowledge of Plaintiff's '633 Patent Family since at least as early as July 20, 2023, when Defendant and DW entered into a licensing agreement relating to Ballot Scout, through which the parties shared information relating to patents and patent applications in the mail-in voting monitoring and reporting space.  In or around 2014, DW's former CEO, Seth Flaxman, contacted Plaintiff relating to Plaintiff's BallotTrax product, which is the commercial

embodiment of the '633 Patent Family. In or around 2015, DW rejected Plaintiff's offer to license Plaintiff's patents and patent applications relating to its BallotTrax product, including the '633 Patent Family. Therefore, Defendant knew of the '633 Patent Family because, as part of its licensing relationship, Defendant and DW shared their knowledge of mail-in ballot monitoring and reporting technology products, services, patent applications, patents, and prior art.

39.    As a result of Defendant's monitoring, investigation, evaluation, and analysis of Plaintiff's patents and applications and as a result of its licensing relationship with DW, where DW and Defendant each monitored Plaintiff's patents and applications and shared information relating to patents and patent applications in the mail-in ballot monitoring and reporting technology space, Defendant has had notice of the '633 Patent Family since at least as of the dates each patent was published and/or issued (*i.e.*, June 6, 2023 and June 24, 2025).

40.    Since at least as early as June 24, 2025, and at least as late as August 28, 2025, Defendant has had knowledge of the '633 patent, its infringement of the '633 patent, others' infringement of the '633 patent, and exemplary infringing software products and services (and components thereof).

41.    Since at least as early as June 24, 2025, and at least as late as August 28, 2025, Defendant has induced and contributed to infringement of the 633 patent pursuant to 35 U.S.C. § 271(b) by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, resellers, distributers, customers, and end users, to make, use, sell, and/or offer to sell in the

United States, and/or import into the United States, the infringing software products and services or components thereof, by, among other things, providing the software products and services or components thereof and incorporated technology, software, specifications, instructions, manuals, advertisements, marketing materials, and technical assistance relating to the installation, set up, use, operation, and maintenance of said software products and services or components thereof. Defendant possessed a specific intent to encourage another's infringement of the '633 patent.

42. By way of example, claim 19 of the '633 patent recites as follows:

A method comprising:

receiving, by a processor of a computer system, voter and ballot data comprising voter information associated with a ballot, wherein the voter information comprises a mailing address and at least one of an e-mail address or mobile device information;

receiving, by the processor from a postal carrier computing system, first data indicative of the ballot being in transit to the mailing address;

sending, by the processor based on the first data, a first status update using the e-mail address or the mobile device information, the first status update indicating that the ballot is in transit to the mailing address;

receiving, by the processor from the postal carrier computing system after the first data is received, second data indicative of the ballot being delivered to the mailing address;

sending, by the processor based on the second data, a second status update using the e-mail address or the mobile device information, the second status update indicating that the ballot has been delivered to the mailing address, wherein the mailing address is a final destination of a first envelope containing the ballot and a second envelope;

receiving, by the processor from the postal carrier computing system after the second data is received, third data indicative of the ballot being delivered in the second envelope to an address associated with a destination different from the mailing address, wherein:

the second envelope includes a graphical representation, and

the third data indicative of the ballot being delivered is based on a scanner that scans the graphical representation and converts the graphical representation into a unique identifier associated with the ballot or a voter;

determining, by the processor based on information stored in a database comprising associations between voters and ballots, a match between the third data and the unique identifier; and

sending, by the processor based on the third data and the match, a third status update using the e-mail address or the mobile device information, the third status update indicating that the ballot has been delivered to the address associated with the destination.

43.     Defendant's Ballot Scout software product embodies or practices each and every limitation of one or more claims of the '633 patent, including at least claim 19.

44.     By way of example, Defendant's Ballot Scout product meets each and every limitation of claim 19 of the '633 patent as shown below:

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| A method comprising: | Ballot Scout includes a method.  Ballot Scout is a software product and/or a web application. |

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| |  https://www.enhancedvoting.com/wp-content/uploads/2024/03/Ballot-Scout-IMG-2.png<br><br>Ballot Scout Voter Explainer 2020 on Vimeo |
| receiving, by a processor of a computer system, voter and ballot data comprising voter information associated with a ballot, wherein the voter information comprises a mailing address and at least one of an e-mail address or mobile device information; | Ballot Scout receives, by a processor of a computer system, voter and ballot data comprising voter information associated with a ballot, wherein the voter information comprises a mailing address and at least one of an e-mail address or mobile device information.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br>https://www.facebook.com/watch/?v=462391279693879 (video announcing the "new ballot tracking system (Ballot Scout)")<br><br>Ballot Scout includes a form requesting voter information to access ballot tracking, including mailing address, email address, and/or mobile device information. |





The receiving is by a processor of a computer system (Ballot Scout is a computer-executable process in the form of a web application).

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| |  https://www.enhancedvoting.com/wp-content/uploads/2024/03/Ballot-Scout-IMG-2.png |
| receiving, by the processor from a postal carrier computing system, first data indicative of the ballot being in transit to the mailing address; | Ballot Scout receives, by the processor from a postal carrier computing system, first data indicative of the ballot being in transit to the mailing address.<br><br>"Ballot Scout tracks mail-in ballots using USPS Intelligent Mail Barcodes." https://www.enhancedvoting.com/solutions/ballot-scout/).<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br>The first data is received by the processor from a postal carrier computing system. https://www.enhancedvoting.com/solutions/ballot-scout/ ("The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way."). |
| sending, by the processor based on the first data, a first status update using the e-mail address or the mobile | Ballot Scout sends, by a processor based on the first data, a first status update using the e-mail address or the mobile device information, the first status update indicating that the ballot is in transit to the mailing address.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo |

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| device information, the first status update indicating that the ballot is in transit to the mailing address; | https://www.facebook.com/watch/?v=462391279693879 (video announcing the "new ballot tracking system (Ballot Scout)")<br><br>Once you sign up for notifications, you'll get updates along the way!<br><br>Your ballot is being prepared!<br>Your ballot has been mailed!<br>Your ballot is scheduled for delivery!<br>Your ballot was received! |



The first status update is sent by the processor based on the first data ("Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way." https://www.enhancedvoting.com/solutions/ballot-scout/. Ballot Scout then uses the data from USPS to provide a status update to the voter's device).

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| |  |
| receiving, by the processor from the postal carrier computing system after the first data is received, second data indicative of the ballot being delivered to the mailing address; | Ballot Scout receives, by the processor from the postal carrier computing system after the first data is received, second data indicative of the ballot being delivered to the mailing address<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br>https://www.enhancedvoting.com/solutions/ballot-scout/. ("The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way," including delivery to the mailing address)<br><br>The second data is received by the processor from the postal carrier computing system after the first data is received ("The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way." https://www.enhancedvoting.com/solutions/ballot-scout/). |

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| sending, by the processor based on the second data, a second status update using the e-mail address or the mobile device information, the second status update indicating that the ballot has been delivered to the mailing address, wherein the mailing address is a final destination of a first envelope containing the ballot and a second envelope; | Ballot Scout sends, by the processor based on the second data, a second status update using the e-mail address or the mobile device information, the second status update indicating that the ballot has been delivered to the mailing address, wherein the mailing address is a final destination of a first envelope containing the ballot and a second envelope.

Ballot Scout Voter Explainer 2020 on Vimeo

https://www.facebook.com/watch/?v=462391279693879
(Video announcing the "new ballot tracking system (Ballot Scout)")

Ballot Scout sends status updates to the voter's device, including notifications to voters that "your ballot is scheduled for delivery."



https://www.sos.nm.gov/voting-and-elections/voter-information-portal-nmvote-org/returning-your-absentee-ballot/
(describing voting by mail includes a ballot and a postage pre-paid official return envelope addressed to the county clerk's office) |

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| | The sending is by the processor based on the second data ("Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way." https://www.enhancedvoting.com/solutions/ballot-scout/. Ballot Scout then uses the data from USPS to provide a status update to the voter's device). |
| receiving, by the processor from the postal carrier computing system after the second data is received, third data indicative of the ballot being delivered in the second envelope to an address associated with a destination different from the mailing address, wherein: | Ballot Scout, by the processor from the postal carrier computing system after the second data is received, receives third data indicative of the ballot being delivered in the second envelope to an address associated with a destination different from the mailing address

Ballot Scout includes a pre-paid official return envelope that may be addressed to the local election office.

Ballot Scout Voter Explainer 2020 on Vimeo

https://www.enhancedvoting.com/solutions/ballot-scout/ ("Voters can easily opt-in for email or SMS text messages that update them with status alerts throughout the journey of their ballot from the post office to their local election office")

The receiving is by the processor from the postal carrier computing system after the second data is received ("The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way." https://www.enhancedvoting.com/solutions/ballot-scout/). |
| the second envelope includes a graphical representation, and | Ballot Scout provides a second envelope having a graphical representation.

The return envelope includes an Intelligent Mail Barcode (IMB). https://www.enhancedvoting.com/solutions/ballot-scout/ ("Our online platform harnesses the power of USPS Intelligent Mail Barcode (IMB) scans and integrates them with data from election offices.") |

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| the third data indicative of the ballot being delivered is based on a scanner that scans the graphical representation and converts the graphical representation into a unique identifier associated with the ballot or a voter; | Ballot Scout provides a third data based on a scanner that scans the graphical representation and converts the graphical representation into a unique identifier associated with the ballot or a voter.<br><br>https://www.enhancedvoting.com/solutions/ballot-scout/ ("Our online platform harnesses the power of USPS Intelligent Mail Barcode (IMB) scans and integrates them with data from election offices.")<br><br>https://postalpro.usps.com/node/219 ("The Mailer Identifier (MID) is explained in Step 2, above. All Intelligent Mail barcodes must contain a valid MID. The Serial Number, in conjunction with the MID and class of mail, can uniquely identify the mailpiece.")<br><br> |
| determining, by the processor based on information stored in a database comprising associations | Ballot Scout determines, by a processor based on information stored in a database comprising associations between voters and ballots, a match between the third data and the unique identifier.<br><br>https://www.enhancedvoting.com/solutions/ballot-scout/ ("Our online platform harnesses the power of USPS Intelligent |

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| between voters and ballots, a match between the third data and the unique identifier; and | Mail barcode (IMB) scans and integrates them with data from election offices.") |
| | The determination is made by the processor based on information stored in a database comprising associations between voters and ballots (voters register for ballots online and thus ballots are associated with voters in a database).  Ballot Scout associates ballots with a third data to track delivery and voters are associated with a unique identifier based on their registered account. |
| | https://www.facebook.com/watch/?v=462391279693879 (Video announcing the "new ballot tracking system (Ballot Scout)" and depicting user registration.) |
| | Enter your name exactly as registered, and the address where your ballot is sent |
| | BALLOT SCOUT Name: John Smith Address: 175 Creek Dr| |

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| |  |
| sending, by the processor based on the third data and the match, a third status update using the e-mail address or the mobile device information, the third status update indicating that the ballot has been delivered to the address associated with the destination. | Ballot Scout sends, by the processor based on the third data and the match, a third status update using the e-mail address or the mobile device information, the third status update indicating that the ballot has been delivered to the address associated with the destination.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br>https://www.facebook.com/watch/?v=462391279693879<br>(Video the "new ballot tracking system (Ballot Scout)"). Ballot Scout sends status updates to the voter's device, including notifications such as,"your ballot was received."<br>: |

| '633 patent, claim 19 | Infringing Product – Ballot Scout |
|---|---|
| | Once you sign up for notifications, you'll get updates along the way!<br><br><br><br>https://www.sos.nm.gov/voting-and-elections/voter-information-portal-nmvote-org/returning-your-absentee-ballot/ (describing voting by mail includes a ballot and a postage pre-paid official return envelope addressed to the county clerk's office)<br><br>Sending the third status update is performed by the processor based on the third data and the match. ("Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way." https://www.enhancedvoting.com/solutions/ballot-scout/. Ballot Scout then uses the data from USPS to provide a status update to the voter's device). |

45.     Defendant's infringement of the '633 patent is willful and deliberate, and

entitles Plaintiff to increased damages pursuant to 35 U.S.C. § 284 and to attorneys'

fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285. Since at least as early as June 24, 2025, and at least as late as August 28, 2025, Defendant has had knowledge of the '633 patent, its infringement of the '633 patent, others' infringement of the '633 patent, and exemplary infringing software products and services. Defendant has infringed and continues to willfully, wantonly, and deliberately infringe the '633 patent despite a high likelihood that its actions constituted infringement.

46.    Plaintiff has been injured and damaged by Defendant's infringement of the '633 patent, and unless enjoined by this Court, Plaintiff will continue to suffer substantial injury, including lost profits, for which Plaintiff is entitled to damages adequate to compensate it for Defendant's infringement.

47.    Defendant's conduct has caused irreparable harm that cannot be remedied by damages alone.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 11,670,127

48.    Plaintiff repeats and re-alleges Paragraphs 1-7, 9-29 as though fully set forth herein.

49.    Defendant has infringed and continues to infringe one or more claims of the '127 patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, and selling in the United States, and/or importing into the United States, certain products that embody or practice one or more claims of the '127 patent, including but not limited to the following products and services: Ballot Scout.

50.    Defendant has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '127 patent by contributing to or inducing acts of infringement by others who make, use, sell, offer for sale, or import in the United States products that embody or otherwise practice one or more claims of the '127 patent.    Such products and services include Ballot Scout. It is especially made for infringing use and not a staple article or commodity of commerce suitable for substantial non-infringing use.

51.    Defendant has had knowledge of the '127 patent and its relevance to the accused products and services since at least August 28, 2025, when counsel for Plaintiff sent a letter and an accompanying claim chart to Defendant's President, Aaron Wilson, informing Defendant of its infringement of the '633 patent, which is related to the '127 patent.

52.    Defendant has had knowledge of the '127 patent and its relevance to the accused software products and services since at least August 28, 2025, when Defendant started reviewing, investigating, and evaluating the '633 patent, and patents and patent applications related to the '633 patent, including the '127 patent.

53.    After receiving Plaintiff's letter regarding Defendant's infringement of the '633 patent, Defendant exchanged communications with DW relating to the '633 Patent Family, including the '127 patent.

54.    On September 22, 2025, DW sent Plaintiff a letter stating that Defendant licenses Defendant's Ballot Scout product from DW and that DW is aware of the '633 Patent Family, including the '127 patent.

55.     Defendant has had knowledge of Plaintiff's '633 Patent Family since at least as early as July 20, 2023, when Defendant and DW entered into a licensing agreement relating to Ballot Scout, through which the parties shared information relating to patents and patent applications in the mail-in voting monitoring and reporting space.  On or around 2014, DW's former CEO, Seth Flaxman, contacted Plaintiff relating to Plaintiff's BallotTrax technology, which is the commercial embodiment of the '633 Patent Family.  In or around 2015, DW rejected Plaintiff's offer to license Plaintiff's patents and patent applications relating to its BallotTrax technology, including the '633 Patent Family.  Therefore, Defendant knew of the '633 Patent Family because, as part of its licensing relationship, Defendant and DW shared their knowledge of mail-in ballot monitoring and reporting technology products, services, patent applications, patents, and prior art.  Defendant has had knowledge of the '127 patent and its infringement thereof since at least as early as 2023, when Plaintiff's President, Steve Olsen, told Defendant's President, Aaron Wilson, that one of Plaintiff's patent applications relating to its innovative BallotTrax technology issued or was expected to issue as the '127 patent.  In or around mid-2023, Defendant requested the patent number of Plaintiff's recently issued patent (*i.e.*, the '127 patent) and Plaintiff provided it to Defendant.  At least as early as 2023, Defendant and Plaintiff had also discussed licensing Plaintiff's BallotTrax technology and rights to Plaintiff's intellectual property relating thereto, including the '633 Patent Family. In or around mid-2023, Defendant instead began licensing the accused Ballot Scout product from DW, thereby effectively rejecting Plaintiff's offer to license Plaintiff's

patents and patent applications relating to its BallotTrax technology, including the '633 Patent Family.  Shortly after Defendant began selling the accused Ballot Scout product, Plaintiff informed Defendant at the 2023 National Association of State Election Directors Conference in Charleston, South Carolina, that Defendant's Ballot Scout technology infringes the '127 patent.  Therefore, Defendant knew of the '127 patent and its infringement thereof because Plaintiff told Defendant that the '127 patent issued, Defendant rejected Plaintiff's offer to license its BallotTrax technology (which included the '127 patent and related applications), Plaintiff told Defendant that Ballot Scout infringed the '127 patent, and Defendant began monitoring Plaintiff's patent applications and patents relating to mail-in ballot monitoring and reporting technology.

56.    As a result of Defendant's monitoring, investigation, evaluation, and analysis of Plaintiff's patents and applications and as a result of its licensing relationship with DW, where DW and Defendant each monitored Plaintiff's patents and applications and shared information relating to patents and patent applications in the mail-in ballot monitoring and reporting technology space, Defendant has had notice of the '633 Patent Family since at least as of the dates each patent was published and/or issued (*i.e.*, June 6, 2023 and June 24, 2025).

57.    Since at least as early as June 6, 2023, and at least as late as August 28, 2025, Defendant has had knowledge of the '127 patent, its infringement of the '127 patent, others' infringement of the '127 patent, and exemplary infringing software products and services (and components thereof).

58.     Since at least as early as June 6, 2023, and at least as late as August 28, 2025, Defendant has induced and contributed to infringement of the '127 patent pursuant to 35 U.S.C. § 271(b) by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, resellers, distributers, customers, and end users, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the infringing software products and services or components thereof, by, among other things, providing the software products and services or components thereof and incorporated technology, software, specifications, instructions, manuals, advertisements, marketing materials, and technical assistance relating to the installation, set up, use, operation, and maintenance of said software products and services or components thereof.  Defendant possessed a specific intent to encourage another's infringement of the '127 patent.

59.     By way of example, claim 1 of the '127 patent recites as follows:

> A method to monitor a status of envelopes and to electronically report the status to users and an elections division, wherein the elections division is separate from a central computer system, in order to facilitate improved transparency in a mail-in ballot process, comprising:
>
> monitoring, by the central computer system, a status of paper ballot materials for each of a plurality of paper ballots, the plurality of paper ballots including a corresponding envelope, each paper ballot associated with a unique voter identifier,
>
> wherein the status of the paper ballot materials is monitored prior to mailing the paper ballot materials to a user of a computing device, during transit of the paper ballot materials to the user, during transit of the paper ballot materials from the user to the elections division, and after

the paper ballot materials have been delivered to the elections division;

generating, by the central computer system, a first data record by associating first tracking data with a first voter identifier, wherein the first voter identifier uniquely identifies a user of a computing device;

storing, by the central computer system, the first data record in a first database;

labeling an outside of a first envelope with a bar code that corresponds to the first tracking data, wherein the bar code is configured for scanning by one or more scanners during transit of the first envelope to obtain second tracking data for sending to a remote computer system;

receiving, via a web-site of the central computer system, a registration by the user to receive automatic reports regarding transit of the first envelope, wherein the user configures sending of the automatic reports based on at least one status selected by the user on the web-site, and wherein the at least one status includes not printed, printed, in-transit, or delivered, the at least one status indicative of delivered including an accepted status or a rejected status;

receiving, by the central computer system from the computing device of the user, a first predetermined event to monitor, wherein the first predetermined event is a change in status of transit of the first envelope;

monitoring, by the central computer system, a second predetermined event;

communicating, by a communications module of the central computer system, with the remote computer system over a network periodically during transit of the first envelope, wherein the communicating comprises receiving the second tracking data from a second database of the remote computer system, and receiving an updated status associated with the second tracking data;

communicating, by the communications module, with the computing device of the user, the communicating including

receiving and automatically reporting data of the first database to the computing device, wherein the reporting is tailored by the user on the web-site, and the reporting includes electronic communication using at least one of an e-mail to the computing device of the user, a text message to the computing device of the user, or communication with the computing device of the user via the web-site;

communicating automatically, by the communications module to the elections division, second reporting data to determine a goal criteria;

identifying, based on associating the second tracking data with the first tracking data, the first data record;

storing, by the central computer system, the updated status in the first data record;

comparing, by the central computer system, the updated status to an existing status in the first data record;

determining, based on comparing the updated status to the existing status, that the first predetermined event has occurred;

determining, based on the comparing the updated status to the existing status, that the second predetermined event has occurred;

in response to determining that the first predetermined event has occurred, automatically sending, by the central computer system to the computing device of the user, a first electronic communication including the updated status;

in response to determining that the second predetermined event has occurred, comparing, by the central computer system, the updated status against the goal criteria to determine a match;

receiving, by the communications module from a computer of the elections division, a notification of rejection of a paper ballot of the user; and

sending, by the communications module, an electronic report to the user regarding the rejection of the paper ballot.

60.    Defendant's Ballot Scout software product embodies or practices each and every limitation of one or more claims of the '127 patent, including at least claim 1.

61.    By way of example, Defendant's Ballot Scout product meets each and every limitation of claim 1 of the '127 patent as shown below:

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| A method to monitor a status of envelopes and to electronically report the status to users and an elections division, wherein the elections division is separate from a central computer system, in order to facilitate improved transparency in a mail-in ballot process, comprising: | Ballot Scout includes a method that monitors a status of envelopes and that electronically reports the status to users and an elections division, wherein the elections division is separate from a central computer system, in order to facilitate improved transparency in a mail-in ballot process.  Ballot Scout is a software product and/or a web application.  https://www.enhancedvoting.com/wp-content/uploads/2024/03/Ballot-Scout-IMG-2.png<br><br>Ballot Scout Voter Explainer 2020 on Vimeo |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| | <br><br>Ballot Scout<br><br>Designed in collaboration with election offices nationwide, Ballot Scout adds transparency, accountability, and confidence to the mail-in voting process by ensuring each vote is tracked and counted.<br><br>Ballot Scout \| Democracy Works |
| monitoring, by the central computer system, a status of paper ballot materials for each of a plurality of paper ballots, the plurality of | Ballot Scout monitors, by the central computer system, a status of paper ballot materials for each of a plurality of paper ballots, the plurality of paper ballots including a corresponding envelope, each paper ballot associated with a unique voter identifier.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo ("Ballot Scout, a start-to-finish ballot tracking tool.")<br><br>Ballot Scout \| Democracy Works |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| paper ballots including a corresponding envelope, each paper ballot associated with a unique voter identifier; | **BALLOT TRACKING ASSISTANCE**<br><br>By entering their personal information, users can easily track their ballot status and take action if any issues arise.<br><br>**This is how Ballot Scout works.**<br><br>Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way.<br><br>• **Election administrators** can access that information and monitor all ballots via a secure dashboard.<br><br>• **Voters** can look up their ballot's status through Ballot Scout's voter-facing online tool, and sign up for status notifications via email and SMS.<br><br><br><br>https://www.enhancedvoting.com/wp-content/uploads/2024/03/Ballot-Scout-IMG-2.png |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| wherein the status of the paper ballot materials is monitored prior to mailing the paper ballot materials to a user of a computing device, during transit of the paper ballot materials to the user, during transit of the paper ballot materials from the user to the elections division, and after the paper ballot materials have been delivered to the elections division; | Ballot Scout monitors the status of paper ballot materials prior to mailing the paper ballot materials to a user of a computing device, during transit of the paper ballot materials to the user, during transit of the paper ballot materials from the user to the elections division, and after the paper ballot materials have been delivered to the elections division.<br><br>"Ballot Scout tracks mail-in ballots using USPS Intelligent Mail Barcodes." https://www.enhancedvoting.com/solutions/ballot-scout/).<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br>https://www.enhancedvoting.com/solutions/ballot-scout/ ("The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way.").<br><br>https://www.facebook.com/watch/?v=462391279693879 (video announcing the "new ballot tracking system (Ballot Scout)") |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| |  |
| generating, by the central computer system, a first data record by associating first tracking data with a first voter identifier, wherein the first voter identifier uniquely identifies a user of a computing device; | Ballot Scout generates, by the central computer system, a first data record by associating first tracking data with a first voter identifier, wherein the first voter identifier uniquely identifies a user of a computing device. <br><br> Ballot Scout Voter Explainer 2020 on Vimeo <br><br> https://www.enhancedvoting.com/solutions/ballot-scout/. ("The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way," including delivery to the mailing address) |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| |  https://www.facebook.com/watch/?v=462391279693879 (video announcing the "new ballot tracking system (Ballot Scout)") |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| |  |
| storing, by the central computer system, the first data record in a first database; | Ballot Scout stores, by the central computer system, the first data record in a database.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| | 63614597fbc107d9a0c7929f_DW_BallotScout_Infographic-Horizontal.png (3574×2312)

**Before the Election**
Your ballot and unique tracking are created
Election officials create your ballot and ensure it has a unique, trackable barcode, called an intelligent mail barcode. This barcode is scanned by the USPS, and used by Ballot Scout to track your ballot's journey through the mail.

**When Ballot Mailing Begins**
Track Your Ballot
Before mailing begins, Ballot Scout receives your mailing information, which means you can begin to track your ballot through Ballot Scout's tool! You can also sign up for text or email notifications, which keep you informed of your ballot's status as it moves through the mail.

https://www.enhancedvoting.com/solutions/ballot-scout/. ("The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way," including delivery to the mailing address)

Ballot Scout | Democracy Works

**BALLOT TRACKING DATA**
By providing timely data on each ballot, Ballot Scout enables election admins to anticipate mail volume, respond to voter questions, and resolve issues in real time. |
| labeling an outside of a first envelope with a | Ballot Scout labels an outside of a first envelope with a bar code that corresponds to the first tracking data, wherein the bar code is configured for scanning by one or more scanners during |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| bar code that corresponds to the first tracking data, wherein the bar code is configured for scanning by one or more scanners during transit of the first envelope to obtain second tracking data for sending to a remote computer system; | transit of the first envelope to obtain second tracking data for sending to a remote computer system.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br>63614597fbc107d9a0c7929f_DW_BallotScout_Infographic-Horizontal.png (3574×2312)<br><br>**Before the Election**<br>Your ballot and unique tracking are created<br>Election officials create your ballot and ensure it has a unique, trackable barcode, called an intelligent mail barcode. This barcode is scanned by the USPS, and used by Ballot Scout to track your ballot's journey through the mail.<br><br>https://www.sos.nm.gov/voting-and-elections/voter-information-portal-nmvote-org/returning-your-absentee-ballot/ (describing voting by mail includes a ballot and a postage pre-paid official return envelope addressed to the county clerk's office)<br><br>https://www.enhancedvoting.com/solutions/ballot-scout/.<br><br>**How it Works**<br><br>Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way. This synergy offers both |
| receiving, via a web-site of the central | Ballot Scout receives, via a web-site of the central computer system, a registration by the user to receive automatic reports regarding transit of the first envelope, wherein the user |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| computer system, a registration by the user to receive automatic reports regarding transit of the first envelope, wherein the user configures sending of the automatic reports based on at least one status selected by the user on the web-site, and wherein the at least one status includes not printed, printed, in-transit, or delivered, the at least one status indicative of delivered including an accepted status or a rejected status; | configures sending of the automatic reports based on at least one status selected by the user on the web-site, and wherein the at least one status includes not printed, printed, in-transit, or delivered, the at least one status indicative of delivered including an accepted status or a rejected status.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br> |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| |  |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| | [Ballot Scout - Enhanced Voting](#)<br><br> |
| receiving, by the central computer system from the computing device of the user, a first predetermined event to monitor, wherein the first predetermined event is a change in status | Ballot Scout receives, by the central computer system from the computing device of the user, a first predetermined event to monitor, wherein the first predetermined event is a change in status of transit of the first envelope.<br><br>[Ballot Scout Voter Explainer 2020 on Vimeo](#) |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| of transit of the first envelope, | <br><br>https://www.enhancedvoting.com/solutions/ballot-scout/<br>("Our online platform harnesses the power of USPS Intelligent Mail Barcode (IMB) scans and integrates them with data from election offices.") |
| monitoring, by the central computer system, a second predetermined event; | Ballot Scout monitors, by the central computer system, a second predetermined event.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| |  https://www.enhancedvoting.com/solutions/ballot-scout/ ("Our online platform harnesses the power of USPS Intelligent Mail Barcode (IMB) scans and integrates them with data from election offices.") |
| communicating, by a communications module of the central computer system, with the remote computer system over a | Ballot Scout communicates, by a communications module of the central computer system, with the remote computer system over a network periodically during transit of the first envelope, wherein the communicating comprises receiving the second tracking data from a second database of the remote computer system, and receiving an updated status associated with the second tracking data. https://www.enhancedvoting.com/solutions/ballot-scout/ ("Our online platform harnesses the power of USPS Intelligent |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| network periodically during transit of the first envelope, wherein the communicating comprises receiving the second tracking data from a second database of the remote computer system, and receiving an updated status associated with the second tracking data; | Mail barcode (IMB) scans and integrates them with data from election offices.")<br><br>Ballot Scout - Enhanced Voting<br><br>**How it Works**<br><br>Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way. This synergy offers both<br><br><br><br>**Vote-by-Mail Tracking Transparency for Officials**<br><br>Ballot Scout delivers a cost-effective and flexible system that effortlessly complements any established workflow. It features an intuitive administrative dashboard tailored for election officials, along with a sophisticated tracking service complete with notifications for voters. Our online platform harnesses the power of USPS Intelligent Mail barcode (IMB) scans and integrates them with data from election offices.<br><br>Ballot Scout \| Democracy Works<br><br>**This is how Ballot Scout works.**<br><br>Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way.<br><br>• **Election administrators** can access that information and monitor all ballots via a secure dashboard.<br><br>• **Voters** can look up their ballot's status through Ballot Scout's voter-facing online tool, and sign up for status notifications via email and SMS. |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
|  |  |
| communicating, by the communications module, with the computing device of the user, the communicating including receiving and automatically reporting data of the first database to the computing device, wherein the reporting is tailored by the user on the web-site, and the reporting includes electronic communication using at least one of an e-mail to the computing device of the user, a text message to the computing device of the user, or communication with the computing device of the | Ballot Scout communicates, by the communications module, with the computing device of the user, the communicating including receiving and automatically reporting data of the first database to the computing device, wherein the reporting is tailored by the user on the web-site, and the reporting includes electronic communication using at least one of an e-mail to the computing device of the user, a text message to the computing device of the user, or communication with the computing device of the user via the web-site.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br>https://www.facebook.com/watch/?v=462391279693879<br>(Video the "new ballot tracking system (Ballot Scout)"). Ballot Scout sends status updates to the voter's device, including notifications such as, "your ballot was received."<br>: |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| user via the web-site; | 

"Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way." https://www.enhancedvoting.com/solutions/ballot-scout/.

Ballot Scout | Democracy Works



**STATUS NOTIFICATIONS**

Available via email or SMS, users can opt in to receive ongoing updates on their ballot's status.

Ballot Scout - Enhanced Voting |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| |  |
| communicating automatically, by the communications module to the elections division, second reporting data to determine a goal criteria; | Ballot Scout communicates automatically, by the communications module to the elections division, second reporting data to determine a goal criteria.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br>63614597fbc107d9a0c7929f_DW_BallotScout_Infographic-Horizontal.png (3574×2312) |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| |  |
| identifying, based on associating the second tracking data with the first tracking data, the first data record; storing, by the central computer system, the updated status in the first data record; comparing, by the central computer system, the updated status to an existing status in the first data record; determining, based on comparing the updated status to the existing status, that the first predetermined | Ballot Scout: identifies, based on associating the second tracking data with the first tracking data, the first data record; stores by the central computer system, the updated status in the first data record; compares, by the central computer system, the updated status to an existing status in the first data record; determines, based on comparing the updated status to the existing status, that the first predetermined event has occurred; and determines, based on the comparing the updated status to the existing status, that the second predetermined event has occurred.<br><br>Ballot Scout \| Democracy Works<br><br>**BALLOT TRACKING ASSISTANCE**<br><br>By entering their personal information, users can easily track their ballot status and take action if any issues arise. |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| event has occurred; determining, based on the comparing the updated status to the existing status, that the second predetermined event has occurred; |  63614597fbc107d9a0c7929f_DW_BallotScout_Infographic-Horizontal.png (3574×2312)<br><br>"Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way." https://www.enhancedvoting.com/solutions/ballot-scout/.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| | Benefits for Election Officials — Ballot Scout<br> |
| in response to determining that the first predetermined event has occurred, automatically | Ballot Scout, in response to determining that the first predetermined event has occurred, automatically sends, by the central computer system to the computing device of the user, a first electronic communication including the updated status.<br><br>Ballot Scout \| Democracy Works |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| sending, by the central computer system to the computing device of the user, a first electronic communication including the updated status; | **BALLOT TRACKING ASSISTANCE**<br><br>By entering their personal information, users can easily track their ballot status and take action if any issues arise.<br><br>**This is how Ballot Scout works.**<br><br>Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way.<br><br>• **Election administrators** can access that information and monitor all ballots via a secure dashboard.<br><br>• **Voters** can look up their ballot's status through Ballot Scout's voter-facing online tool, and sign up for status notifications via email and SMS.<br><br>63614597fbc107d9a0c7929f_DW_BallotScout_Infographic-Horizontal.png (3574×2312)<br><br>**As Your Ballot Travels to You**<br>Sit back, relax, and follow your ballot<br><br>As your ballot moves through the mail, it's scanned by the USPS along the way. Ballot Scout is informed each time your ballot is scanned, and updates you through our online tool. If you're signed up for notifications, you'll receive updates directly via text or email.<br><br>"Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way." https://www.enhancedvoting.com/solutions/ballot-scout/.<br><br>FAQ — Ballot Scout |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| |  |
| in response to determining that the second predetermined event has occurred, comparing, by the central computer | Ballot Scout, in response to determining that the second predetermined event has occurred, comparing, by the central computer system, the updated status against the goal criteria to determine a match.<br><br>Ballot Scout \| Democracy Works |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| system, the updated status against the goal criteria to determine a match; | **BALLOT TRACKING ASSISTANCE**<br><br>By entering their personal information, users can easily track their ballot status and take action if any issues arise.<br><br>**This is how Ballot Scout works.**<br><br>Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way.<br><br>• **Election administrators** can access that information and monitor all ballots via a secure dashboard.<br><br>• **Voters** can look up their ballot's status through Ballot Scout's voter-facing online tool, and sign up for status notifications via email and SMS.<br><br>63614597fbc107d9a0c7929f_DW_BallotScout_Infographic-Horizontal.png (3574×2312)<br><br><br><br>"Ballot Scout tracks mail-in ballots using USPS Intelligent Mail barcodes. The USPS scans these barcodes throughout each ballot's journey and shares updates with Ballot Scout along the way." https://www.enhancedvoting.com/solutions/ballot-scout/.<br><br>FAQ — Ballot Scout |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| | **HOW DO NOTIFICATIONS WORK?**<br><br>After you sign up, Ballot Scout will send a text and/or email whenever your ballot moves to a new status. When you sign up, if your ballot has already started traveling, you will not receive notifications for any of the previous statuses.<br><br>Ballot Scout Voter Explainer 2020 on Vimeo<br><br> |
| receiving, by the communications module from a computer of the elections division, a notification of rejection of a paper ballot of the user; and | Ballot Scout receives, by the communications module from a computer of the elections division, a notification of rejection of a paper ballot of the user.<br><br>Benefits for Election Officials — Ballot Scout |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| |  |
| sending, by the communications module, an | Ballot Scout sends, by the communications module, an electronic report to the user regarding the rejection of the paper ballot. |

| '127 patent, claim 1 | Infringing Product – Ballot Scout |
|---|---|
| electronic report to the user regarding the rejection of the paper ballot. | **FAQ — Ballot Scout**<br>**WHAT DOES MY BALLOT'S STATUS MEAN?**<br><br>Please see the below definitions for all possible ballot statuses. Note that each ballot may not go through every single status, and that some status features* (Mailed back to office, In transit to office, Received, Accepted, Not accepted) are only available in select areas.<br><br>• **Being Prepared** - Your ballot has not entered the mail yet but is being prepared by your local election office. This status is always updated by election offices; it is never associated with USPS data.<br>• **Mailed to You** - the USPS has your ballot and it is on the way to your address<br>• **Delivery Scheduled** - Your ballot is at your local post office and it has an estimated delivery date. It should arrive at your address on/about that date with your regular mail.<br>• **Returned to Sender** - The USPS was unable to deliver your ballot to your address. A new ballot may need to be issued.<br>• **Mailed to Office*** - Your completed ballot is traveling back to the election office through the mail<br>• **Received by Office*** - Your ballot has been received by the election office. This can mean the USPS delivered your ballot, or the ballot was delivered by hand or drop box, if they are available. For some areas, this will be the final status of your ballot.<br>• **Received by Office - Accepted*** - Your ballot has been marked as accepted for counting by an election office. This status is always updated by the election office; it is never associated with USPS data.<br>• **Received by Office - Flagged*** - Your ballot may have an issue and you should reach out to your election office. This status is always updated by election offices; it is never associated with USPS data.<br><br>**Benefits for Election Officials — Ballot Scout**<br><br>**THE VOTER FACING TRACKING TOOL OFFERS:**<br><br>• Easy and secure for voters to look up the status of their ballot<br>• Status updates from both USPS data and office provided data<br>• Return to Sender information before the ballot arrives back at office<br>• Office statuses such as 'received', 'accepted' or 'flagged' if provided<br>• Easy and secure for voters to sign up for email or SMS notifications |

62.    Defendant's infringement of the '127 patent is willful and deliberate, and entitles Plaintiff to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.  Since

at least as early as June 6, 2023, and at least as late as August 28, 2025, Defendant has had knowledge of the '127 patent, its infringement of the '127 patent, others' infringement of the '127 patent, and exemplary infringing software products and services.  Defendant has infringed and continues to willfully, wantonly, and deliberately infringe the '127 patent despite a high likelihood that its actions constituted infringement.

63.    Plaintiff has been injured and damaged by Defendant's infringement of the '127 patent and unless enjoined by this Court, Plaintiff will continue to suffer substantial injury, including lost profits, for which Plaintiff is entitled to damages adequate to compensate it for Defendant's infringement.

64.    Defendant's conduct has caused irreparable harm that cannot be remedied by damages alone.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of a judgment in its favor and against Defendant as follows:

A.    Finding that Defendant has infringed, directly or indirectly, one or more claims of the '633 patent and '127 patent and such infringement has been willful;

B.    Permanently enjoining Defendant, its officers, directors, employees, agents, subsidiaries, licensees, servants, successors and assigns, and any and all persons acting in privity or in concert or participation with Defendant from further infringement of the '633 patent and '127 patent under 35 U.S.C. § 283;

C.      Awarding Plaintiff damages adequate to compensate Plaintiff for Defendant's infringement of the '633 patent and '127 patent along with pre- and post-judgment interest, and trebling such damages under 35 U.S.C. § 284;

D.      Finding that this case is an exceptional case under 35 U.S.C. § 285, and awarding Plaintiff its attorneys' fees, costs, and expenses incurred in this action;

E.      Awarding Plaintiff its actual and compensatory damages; and

F.      Awarding Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable by jury.

Dated:      February 13, 2026

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**

*/s/ Joshua R. Brown*
Joshua R. Brown, BCS,
*Lead Trial Counsel*
Florida Bar No. 826391
brownjr@gtlaw.com
Erik M. Bokar
Florida Bar No. 1061748
bokare@gtlaw.com
GREENBERG TRAURIG, P.A.
450 S. Orange Avenue, Suite 650
Orlando, FL 32801
Telephone No. (407) 420-1000

Eric Maiers, Esq.
(*pro hac vice* application forthcoming)
eric.maiers@gtlaw.com
Greenberg Traurig, LLP

360 North Green St., Suite 1300
Chicago, IL 60607
(312) 456.8400

S. Chase Means, Esq.
(*pro hac vice* application forthcoming)
chase.means@gtlaw.com
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

*Attorneys for Plaintiff*